UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br>LEHMAN BROTHERS HOLDINGS INC., *et al.*,<br>    Debtors. | Chapter 11<br>Case No. 08-13555 (JMP)<br>(Jointly Administered) |
| MICHIGAN STATE HOUSING DEVELOPMENT AUTHORITY, a public body corporate,<br>    Plaintiff/Counterclaim Defendant,<br>            v.<br>LEHMAN BROTHERS DERIVATIVE PRODUCTS INC. and LEHMAN BROTHERS HOLDINGS INC.,<br>    Defendants,<br>            and<br>LEHMAN BROTHERS SPECIAL FINANCING, INC.,<br>    Defendant/Counterclaim Plaintiff,<br>            and<br>OFFICIAL COMMITTEE OF UNSECURED CREDITORS,<br>    Intervening Defendant/Counterclaim Plaintiff. | Dist. Ct. No. 11-03392 (JGK)<br><br>Bankr. Ct. Adv. Proc. No. 09-01728 |

**REPLY IN SUPPORT OF MICHIGAN STATE HOUSING DEVELOPMENT
AUTHORITY'S MOTION TO WITHDRAW THE REFERENCE**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................................. ii

I.   THIS CASE RAISES NOVEL ISSUES OF LAW THAT HAVE BROAD
     IMPLICATIONS ..............................................................................................................................3

II.  THE *ORION* FACTORS SUPPORT WITHDRAWAL OF THE REFERENCE ......................5

       A.   LBSF's counterclaims are non-core................................................................................5

            1.   This Court has the authority to decide the core/non-core question ....................5

            2.   LBSF's counterclaims are non-core......................................................................7

       B.   Even if this were a core matter, other Orion factors support withdrawal .......................8

CONCLUSION................................................................................................................................10

# TABLE OF AUTHORITIES

## CASES

Page(s)

*Ace Am. Ins. Co. v. DPH Holdings Corp. (In re DPH Holdings Corp.)*,
   437 B.R. 88 (S.D.N.Y. 2010) ................................................................................... 7, 8

*Calpine Energy Servs. v. Reliant Energy Elec. Solutions (In re Calpine Corp.)*,
   No. 08-1251, 2009 WL 1578282 (Bankr. S.D.N.Y. May 7, 2009) ....................................... 4

*Hassett v. BancOhio Nat'l Bank (In re CIS Corp.)*,
   172 B.R. 748 (S.D.N.Y. 1994) ................................................................................. 7

*Houbigant, Inc. v. ACB Mercantile (In re Houbigant, Inc.)*,
   185 B.R. 680 (S.D.N.Y. 1995) ................................................................................. 5

*In re Chateaugay Corp.*,
   86 B.R. 33 (S.D.N.Y. 1987) ..................................................................................... 3

*In re Parklane/Atlanta Joint Venture*,
   927 F.2d 532 (11th Cir. 1991) ................................................................................. 3

*In re United States Lines, Inc.*,
   197 F.3d 631 (2d Cir. 1999) .................................................................................... 8

*Interconnect Tel. Servs., Inc. v. Farren*,
   59 B.R. 397 (S.D.N.Y. 1986) ................................................................................... 6

*Keene Corp. v. Williams Bailey & Wesner L.L.P. (In re Keene Corp.)*,
   182 B.R. 379 (S.D.N.Y. 1995) ................................................................................. 6

*Lehman Bros. Special Fin. Inc. v. BNY Corporate Tr. Servs. Ltd. (In re Lehman Bros. Holdings Inc.)*,
   422 B.R. 407 (Bankr. S.D.N.Y. 2010) ............................................................... passim

*Lehman Bros. Special Fin. Inc. v. Ballyrock ABS CDO 2007-1 Ltd. (In re Lehman Bros. Holdings Inc.)*,
   No. 09-01032, 2011 WL 1831779 (Bankr. S.D.N.Y. May 12, 2011) ................... 1, 3, 8

*Mishkin v. Ageloff*,
   220 B.R. 784 (S.D.N.Y. 1998) .............................................................................. 5, 8

*Orion Pictures Corp. v. Showtime Networks (In re Orion Pictures Corp.)*,
   4 F.3d 1095 (2d Cir. 1993) ..................................................................................... 5

*Orion Pictures Corp. v. Showtime Networks (In re Orion Pictures Corp.)*,
    139 B.R. 785 (S.D.N.Y. 1992) .................................................................................... 6-7

*Point Blank Solutions, Inc. v. Robbins Geller Rudman & Dowd LLP (In re Point Blank Solutions, Inc.)*,
    No. 10-55361, 2011 WL 1988817 (Bankr. D. Del. May 20, 2011) ..................................... 7

*Veyance Techs., Inc. v. Lehman Bros. Special Fin. Inc.*,
    No. 09 Civ. 8851, 2009 WL 4496051 (S.D.N.Y. Dec. 3, 2009) ......................................... 7

**STATUTES**

11 U.S.C. § 365(e) ............................................................................................................. 1

11 U.S.C. § 542 ................................................................................................................. 7

11 U.S.C. § 560 ................................................................................................................. 1

28 U.S.C. § 157 ................................................................................................................. 6

The central question presented in this case is whether a contractual provision in a swap agreement—setting forth a mechanism for determining how much is paid, and to whom, in the event the agreement terminates on account of a bankruptcy filing—is enforceable. Lehman[1] contends that the answer to that question is "no," pointing to the prohibition on the enforcement of "*ipso facto*" provisions in Section 365(e) of the Bankruptcy Code. The Michigan State Housing Development Authority ("MSHDA") contends that the answer to that question is "yes," arguing that the "safe harbor" contained in Section 560 of the Bankruptcy Code protects such a contractual provision from *ipso facto* challenge.

The bankruptcy court has made clear that it agrees with Lehman's view on this issue, issuing highly controversial decisions to that effect in both *Lehman Bros. Special Fin. Inc. v. BNY Corporate Tr. Servs. Ltd.*, 422 B.R. 407 (Bankr. S.D.N.Y. 2010) ("*BNY Trustee*") and *Lehman Bros. Special Fin. Inc. v. Ballyrock ABS CDO 2007-1 Ltd.*, No. 09-01032, 2011 WL 1831779 (Bankr. S.D.N.Y. May 12, 2011) ("Ballyrock").

Billions of dollars—perhaps tens of billions—turn on the answer to that question, leading Judge McMahon to observe in *BNY Trustee* that it was important that the question be resolved "*now*—not months, or even years, from now." Decision and Order, S.D.N.Y. M-47 (CM) (S.D.N.Y. Sept. 20, 2010) ("Sept. 20 Order") at 16. But the parties to the appeal in *BNY Trustee* settled, and the decision in *Ballyrock* was not an appealable order. MSHDA is therefore not aware of any near-term prospect for obtaining a resolution of that question—one whose reverberations continue to be felt across Lehman's sprawling bankruptcy case and beyond.[2]

---

[1] "Lehman" refers collectively to Plaintiffs and Counterclaim Defendants Lehman Brothers Holdings Inc. ("LBHI"), Lehman Brothers Derivatives Products Inc. ("LBDB") and Lehman Brothers Special Financing Inc. ("LBSF").

[2] In *BNY Trustee*, Judge McMahon described Lehman's arguments against immediate appeal as "an attempt … to insulate Judge Peck's decision from appellate review for as long as possible" to permit it to wield the decision "as leverage in settlement negotiations concerning billions of dollars worth of similar transactions." Sept. 20 Order

MSHDA's Motion to Withdraw the Reference (the "Motion") makes the commonsense point that a district court has the authority to withdraw the reference from a bankruptcy court at any time, in the interests of judicial economy.  As MSHDA explains in its Motion, the exercise of that authority is warranted here both in light of the circumstances of the particular dispute and in light of the far-ranging and destabilizing consequences of Judge Peck's novel construction of the Bankruptcy Code's safe harbor provisions.

Withdrawal of the reference would be appropriate here even if only this dispute were implicated.  Judge Peck has made his views clear on one of the central questions of the case.  MSHDA respectfully disagrees with that view.  There can be no dispute that this legal question will *ultimately* make its way to this Court.  And because it is a question of law, it will then be subject to *de novo* review regardless of whether it is viewed as a "core" or "non-core" matter.  Requiring the parties to proceed in bankruptcy court thus simply delays the inevitable.  And if Lehman is correct, the cost of that delay is interest calculated at the overnight LIBOR rate plus 13.5 percent, payable by a public entity whose mission is to support affordable housing in some of the nation's most desperate communities.  But the issue presented here has implications far beyond this particular dispute.  For all of the reasons Judge McMahon gave in *BNY Trustee*, the stability of global financial markets depends on obtaining a prompt and certain answer to the "*ipso facto*" question presented in this case.

---

at 15.  *See also* Motion, D.I. 17195, Case No. 08-13555 (Bankr. S.D.N.Y.  May 27, 2011) (Lehman's pending motion to extend stay of litigation over securitization transactions, in favor of mandatory mediation procedures); Omnibus Reply, D.I. 17602, Case No. 08-13555 (Bankr. S.D.N.Y.  June 13, 2011) (responding to counterparties' objections to extension of stay).

The recently revealed terms of the settlement reached in the *BNY Trustee* dispute—in which investors who would receive only the value of their distressed collateral if they prevailed on appeal will receive as much as 85 cents on the dollar on their claims—is broadly consistent with Judge McMahon's suggestion.  *See Lehman to Settle with Australian Derivatives Traders*, Futures Mag., (May 17, 2011), http://www.futuresmag.com/News/2011/5/Pages/Lehman-will-pay-some-derivatives-traders-in-Australia.aspx.

Contrary to Lehman's suggestion, withdrawing the reference would hardly "second guess" Congress' judgment about the administration of bankruptcy cases. Congress granted district courts the express statutory authority to withdraw the reference precisely so that they could exercise judgment and discretion about the circumstances in which it would be appropriate for matters to proceed directly in the district court. Because this is such a case, the reference should be withdrawn.

## I. THIS CASE RAISES NOVEL ISSUES OF LAW THAT HAVE BROAD IMPLICATIONS

Lehman does not dispute that this Court has broad discretion to withdraw the reference for cause when confronted with a dispute posing novel legal issues with broad implications. *See* Mem. at 21-23 (citing *In re Chateaugay Corp.*, 86 B.R. 33, 39 (S.D.N.Y. 1987)[3]); *see also In re Parklane/Atlanta Joint Venture*, 927 F.2d 532, 538 (11th Cir. 1991). Rather, Lehman points (Opp. 22, 24) to the factual distinction between the "flip clause" provision at issue in *BNY Trustee* and the different mechanism for determining the amount due upon the termination of the parties' agreement in this case. While it is true that the contracts are different, nothing in Lehman's Opposition calls into question the central argument in the Motion—that both cases present the fundamental question of whether a contractual provision in a swap agreement setting forth a mechanism for determining how much is paid, and to whom, in the event the agreement terminates on account of a bankruptcy filing, can be enforced according to its terms. If the answer to that question—contrary to the bankruptcy court's conclusion in *BNY Trustee* and *Ballyrock*—is "yes," LBSF's counterclaim against MSHDA fails.

---

[3] While Lehman contends (Op. 23-24) that *In re Chateaugay Corp* also addressed mandatory withdrawal of the reference, none of that detracts from the alternative holding that a district court may exercise its discretion to withdraw the reference for cause in cases presenting novel legal issues of first impression that have a broad impact.

Lehman's contention that this case may not implicate the important questions that led Judge McMahon to grant interlocutory review in *BNY Trustee* is belied by its own actions. While LBSF's initial counterclaim against MSHDA did not even raise an "*ipso facto*" argument, it moved, following the *BNY Trustee* decision, to amend its counterclaims to argue that a provision governing calculation of settlement amount in the event of a termination in the parties' Amendment and Assignment Agreement is an *ipso facto* clause unprotected by the safe harbor provisions.[4] Unsurprisingly, LBSF's motion for leave to amend relies on the *BNY Trustee* decision in support of that novel theory. *See* Motion for Leave to Amend Counterclaim, D.I. 15 (Bankr. S.D.N.Y. Dec. 28, 2010) (citing *BNY Trustee*, 422 B.R. at 421), attached as Ex. 1.

Lehman's remaining efforts (Opp. 22) to minimize the importance of the *BNY Trustee* decision and to suggest that it is not implicated by this dispute are unsuccessful. Far from being a "peculiar" issue that will affect only "a handful of counterparties," the central question presented by this case is an issue of general applicability to many Lehman counterparties and of enormous consequence to the administration of the bankruptcy case and the stability of the derivatives market. That consideration alone provides more than sufficient "cause" for withdrawing the reference.

---

[4] Lehman acted over a year after filing its original Answer and Counterclaims and nearly two years after the district court's decision in *Calpine Energy Servs. v. Reliant Energy Elec. Solutions (In re Calpine Corp.)*, No. 08-1251, 2009 WL 1578282 (Bankr. S.D.N.Y. May 7, 2009).

## II. THE *ORION* FACTORS SUPPORT WITHDRAWAL OF THE REFERENCE

While the need to reach a prompt resolution of a highly consequential legal question is by itself sufficient "cause" for this Court's consideration of this case, other factors that the Second Circuit has identified as relevant to the decision whether to withdraw the reference, *see Orion Pictures Corp. v. Showtime Networks (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1101 (2d Cir. 1993), also strongly support doing so here.

### A. LBSF's counterclaims are non-core

Lehman expends great energy contending that withdrawal of the reference is inappropriate because LBSF's counterclaims are "core" proceedings, and arguing that only the bankruptcy court can make the core/non-core determination. But whether LBSF's counterclaims are core or non-core is not dispositive. *See Mishkin v. Ageloff*, 220 B.R. 784, 800 (S.D.N.Y. 1998)*; see also Houbigant v. ACB Mercantile (In re Houbigant, Inc.)*, 185 B.R. 680, 686 (S.D.N.Y. 1995). Indeed, in a case like this one, where what is at issue is a controlling legal question that this Court would review *de novo* in any event, as a common-sense matter the core/non-core distinction should have little significance. Regardless, LBSF's counterclaims are non-core claims, and this Court has ample authority to decide that issue.

#### 1. This Court has the authority to decide the core/non-core question

Lehman argues (Opp. 11-12) that MSHDA's Motion is premature because the bankruptcy court must first resolve whether the claims at issue in this proceeding are core. That position affronts common sense: Lehman offers no reason—and there is none—that Congress would have wanted to require a preliminary determination by the bankruptcy court that could only delay the district court's resolution of matters as to which withdrawal is warranted. Withdrawal of the reference, after all, is designed to further judicial economy.

5

Lehman's position also contravenes the clear language and structure of the statute. Section 157(b) distinguishes between core and non-core proceedings. Bankruptcy courts may "hear and determine" core proceedings, *id.*, but may only "hear," and not "determine," non-core proceedings, *id.* § 157(c). The statute provides that, "on the judge's own motion or on timely motion of a party," the bankruptcy judge shall determine whether a matter is core or non-core. Section 157(b)(3) makes clear that the bankruptcy judge has the power to decide in the first instance which matters it has the power to "determine"—a question whose resolution one might otherwise have thought lay with the district court. But nothing in Section 157(b)(3) purports to strip from the district court the authority to decide whether a proceeding is core or non-core when ruling on a motion to withdraw the reference—a power provided for in a wholly separate provision of the statute, Section 157(d). *See* 28 U.S.C. § 157(d).

District courts in this Circuit routinely determine in the first instance whether claims are core or non-core. *See* Mem. at 14 n.13 (citing cases). *See also Keene Corp. v. Williams Bailey & Wesner, L.L.P. (In re Keene Corp.)*, 182 B.R. 379, 383 (S.D.N.Y. 1995) ("[N]othing in [§ 157(b)(3)] . . . or any other statute vests . . . [the core proceeding question] exclusively in the bankruptcy court . . . [and] I see no reason to require the bankruptcy judge to make an initial determination based on facts which are presently before me."); *Interconnect Tel. Servs., Inc. v. Farren,* 59 B.R. 397, 401 n.2 (S.D.N.Y. 1986) ("Plaintiff's suggestion that only the bankruptcy court may classify an action as a core or non-core proceeding does not merit much discussion . . . [because] [i]t is clear that the district court is empowered to make such a determination . . . [since] [t]he bankruptcy courts are an adjunct of the district court, and their jurisdiction is derivative."). Indeed, in the lower court proceedings in *Orion*, it was the district court—not the bankruptcy court—that made the initial determination. *Orion Pictures v. Showtime Networks (In*

6

*re Orion Pictures Corp.)*, 139 B.R. 785, 787 (S.D.N.Y. 1992) ("Whether Orion's action against Showtime is a core proceeding . . . is a determination to be made by th[is] Court.") (citations omitted). If the Second Circuit shared Lehman's view that some provision of Section 157 contains a *sub silentio* requirement that the district court defer to the bankruptcy court in making such a determination, it presumably would have said so in that decision.[5]

### 2. LBSF's counterclaims are non-core

Lehman does not address MSHDA's demonstration (Mem. at 14-19) that LBSF's permissive counterclaims are non-core. Nor does Lehman identify any authority for the proposition that the need to construe the *ipso facto* provisions and safe harbor provisions in a breach of contract action transforms that otherwise non-core proceeding into a core proceeding. And while Lehman points to a handful of decisions to support its argument that LBSF's counterclaims are core, none of them is apposite.

For example, *Point Blank Solutions, Inc. v. Robbins Geller Rudman & Down LLP (In re Point Blank Solutions, Inc.)*, No. 10-55361, 2011 WL 1988817 (Bankr. D. Del. May 20, 2011), merely holds that an action to recover property of the estate pursuant to 11 U.S.C. § 542 is a core dispute—it says nothing regarding claims like Lehman's for breach of contract, and unjust enrichment. Nor does *Ace Am. Ins. Co. v. DPH Holdings Corp. (In re DPH Holdings Corp.)*, 437 B.R. 88 (S.D.N.Y. 2010), support Lehman's position. At least part of the *DPH* court's decision focused on post-petition contracts, *see id.* at *95*; the document at issue in this proceeding

---

[5] Lehman incorrectly suggests that the district courts that have made the core/non-core determination in the first instance have required the party seeking to withdraw the reference to set forth a "compelling reason" as to why the district court should not defer to the bankruptcy court. Opp. at 12 (citing *Veyance Techs., Inc. v. Lehman Bros. Special Fin. Inc*., No. 09-8851, 2009 WL 4496051, at *2 (S.D.N.Y. Dec. 3, 2009)). Other than Judge Jones in the *Veyance* case, MSHDA is aware of no other district court judge in this circuit who has articulated such a requirement. In any event, for the reasons set forth herein, such compelling reasons exist here. *See also Hassett v. BancOhio Nat'l Bank (In re CIS Corp.)*, 172 B.R. 748, 755 (S.D.N.Y. 1994) (ruling on the core/non-core matter in the first instance because "[r]emanding the case to the bankruptcy court for determination would generate an undue delay . . . . Once the bankruptcy court makes its decision, it would undoubtedly come back to this Court for *de novo* review").

is a prepetition contract. And, while in exceptional cases—such as "[d]isputes involving major insurance contracts . . . [that] have a significant effect on core functions of the bankruptcy court"—prepetition contract disputes can be converted into core matters, *see id.* at 96 (citing *In re United States Lines, Inc.*, 197 F.3d 631, 638 (2d Cir. 1999)), there can be no suggestion that the resolution of this dispute will "ultimately determine the validity and priority of the claims" filed against the estate—a determinative factor in the court's analysis in *DPH Holdings*. *See id.* at 96.

### B.     Even if this were a core matter, other *Orion* factors support withdrawal

In any event, as discussed above, the core/non-core distinction is in no way dispositive of the motion to withdraw the reference. "In the final analysis, the critical question is efficiency and uniformity." *Mishkin*, 220 B.R. at 800. Those factors strongly favor withdrawal of the reference here.

Lehman's principal contrary contention (Opp. 17-18) is that the bankruptcy court has developed an expertise with respect to derivatives contracts. While that is certainly true as far as it goes, it has nothing to do with the question now before this Court. If MSHDA is correct that—contrary to the bankruptcy court's holdings in *BNY Trustee* and *Ballyrock*—its contract may be enforced in accordance with its terms under the Bankruptcy Code's safe harbor provisions, MSHDA prevails here. To resolve that legal question, there is no need to consider any subtle nuances of the terms of derivatives agreements. Requiring the parties to litigate that controlling question of law twice—once before the bankruptcy court, and a second time *de novo* before this Court—is contrary to principles of judicial efficiency.

And while MSHDA appreciates that this Court has a busy and active docket, in the unusual circumstances of the Lehman bankruptcy, it would be particularly imprudent to require the parties to engage in redundant litigation before the bankruptcy court. In late 2009, Lehman's

own representatives expressed concern about "overburden[ing] the [c]ourt" with a growing "laundry list of litigations."  Tr. Status Conference, Case No. 08-13555 (Bankr. S.D.N.Y. Nov. 18, 2009) ("Nov. 18 Tr.") at 22, 24.[6]  The bankruptcy court echoed this sentiment, noting that there were "in excess of 64,000 claims [against Lehman] with a face amount of $820 billion" and that "[t]his is a process that will be going on for a while."  *Id.* at 65-66.  Indeed, as recently as September 2010, Lehman's counsel admitted that "in terms of litigation activities . . . we have a slew of them."  Tr. Status Conference, Case No. 08-13555 (Bankr. S.D.N.Y. Sept. 22, 2010) ("Sept. 22 Tr.") at 39.[7]  The bankruptcy court's recent commencement of the time-consuming process of approving Lehman's disclosure statement and, ultimately, its reorganization plan will only add to its already heavy workload associated with the Lehman bankruptcy.  *See* Order, D.I. No. 16180, Case No. 08-13555 (Bankr. S.D.N.Y. Apr. 21, 2011).

Lehman also suggests that MSHDA's argument for minimizing delay is unfounded because MSHDA has "sat idly" by for over a year.  Opp. at 19.  But LBSF did not amend its counterclaims to raise the question presented in this motion until January of this year.  Lehman's suggestion that MSHDA should have been required to file a motion to withdraw the reference on account of a position that MSHDA learned about during the course of confidential mediation is, to say the least, surprising.

Nor is there any merit to Lehman's contention that MSHDA is engaged in "forum shopping."  In light of the importance of the issues presented and the substantial amounts at stake, there can be no question that this matter will eventually reach this Court.  There is no

---

[6]  *See also* Nov. 18 Tr. at 10, 28 (noting a "huge volume of legal activity on the horizon" and that consequently "the potential litigation claims . . . [will] take us years, maybe, to resolve").

[7]  Lehman's counsel's expectation that "[u]ndoubtedly," further litigation will soon "augment[] the substantial litigation that has already been commenced and is pending before the Court," *see* Sept. 22 Tr. at 26, has come to pass.  Even a cursory examination of the bankruptcy court's docket reveals that as of June 6, 2011, there are at least 110 open adversary proceedings associated with the Lehman bankruptcy.

question as to *who* will decide this case—the only question is *when*. And for all the reasons given above, the answer to that question is "the sooner, the better." This Court should withdraw the reference and provide the clarity so urgently needed by deciding this important legal question.

## CONCLUSION

For the foregoing reasons and the reasons outlined in the Memorandum, MSHDA's Motion and the relief sought therein should be granted.

Date:  June 13, 2011

Respectfully submitted,

/s/ Christopher Carrion

| | |
|---|---|
| Michael Murphy | Christopher Carrion |
| Jennifer M. Jackson | Jeannette Boot |
| Assistant Attorney General | WILMER CUTLER PICKERING HALE |
| State Operations Division | AND DORR LLP |
| Michigan Department of Attorney General | 399 Park Avenue |
| P.O. Box 30754 | New York, NY  10022 |
| Lansing, Michigan 48909 | (212) 230-8800 |
| Tel: (517) 373-1162 | |
| Fax: (517) 373-2060 | Danielle Spinelli (DS 7097) |
| | Craig Goldblatt |
| | WILMER CUTLER PICKERING HALE |
| | AND DORR LLP |
| | 1875 Pennsylvania Avenue, N.W. |
| | Washington, D.C.  20006 |
| | (202) 663-6000 |

*Counsel for Michigan State Housing Development Authority*

**CERTIFICATE OF SERVICE**

The undersigned certifies that a true and correct copy of Michigan State Housing Development Authority's Reply in Support of its Motion to Withdraw the Reference was caused to be served on the following via electronic mail on the 13th day of June, 2011:

>Anthony J. Albanese
>anthony.albanese@weil.com
>Peter Gruenberger
>peter.gruenberger@weil.com
>Evert J. Christensen, Jr.
>evert.christensen@weil.com
>WEIL GOTSHAL & MANGES LLP
>767 Fifth Avenue
>New York, NY 10153
>
>*Counsel for Debtors and Defendants*
>
>Dennis F. Dunne
>ddunne@milbank.com
>Wilbur F. Foster, Jr.
>wfoster@milbank.com
>Evan R. Fleck
>efleck@milbank.com
>MILBANK, TWEED, HADLEY &
>McCLOY LLP
>1 Chase Manhattan Plaza
>New York, NY 10005
>
>David S. Cohen
>dcohen2@milbank.com
>MILBANK, TWEED, HADLEY &
>McCLOY LLP
>1850 K Street, N.W.
>Suite 1100
>Washington, DC 20006
>Telephone: (202) 835-7500
>Facsimile: (202) 835-7586
>
>*Counsel for the Official Committee of*
>*Unsecured Creditors of Lehman Brothers*
>*Holdings Inc., et al.*

/s/ Christopher Carrion
Christopher Carrion
WILMER CUTLER PICKERING HALE
    AND DORR LLP
399 Park Avenue
New York, NY  10022
(212) 230-8800

*Counsel for Michigan State Housing Development Authority*

Dated: June 13, 2011